UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK


USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #. _____
DATE FILED: 10-30-19

| | |
|---|---|
| SELWYN KARP, Individually and On Behalf of All Others Similarly Situated<br><br>           Plaintiff,<br><br>-against-<br><br>DIEBOLD NIXDORF, INCORPORATED, ANDREAS W. MATTES, and CHRISOPHER A. CHAPMAN,<br><br>           Defendants. | 19 Civ. 6180(LAP) |
| CITY OF DEARBORN HEIGHTS ACT 345 POLICE AND FIRE RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>           Plaintiff,<br><br>-against-<br><br>DIEBOLD NIXDORF, INCORPORATED, ANDREAS W. MATTES, and CHRISOPHER A. CHAPMAN,<br><br>           Defendants. | 19 Civ. 6514(LAP)<br><br>OPINION & ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

    Before the Court are the issues of: (1) consolidating the above-captioned securities class actions pursuant to Federal Rule of Civil Procedure 42, see Fed. R. Civ. P. 42(a); (2) appointing lead plaintiff in said securities cases pursuant to the Private Securities Litigation Reform Act ("the PSLRA"), see

1

15 U.S.C. § 78u-4; and (3) approving the selection of counsel for lead plaintiff, also pursuant to the PSLRA. Of these issues, only the appointment of Lead Plaintiff is hotly contested.

Three parties have jockeyed for the status of lead plaintiff in these actions. These include a pairing of the University of Puerto Rico Retirement System (the "UPR System") and the General Retirement System of the City of Detroit (the "Detroit System") (together, the "UPR/Detroit Movants"); individual investors Manoj Arora and Neelam Arora, a married couple (together, the "Aroras"); and an interested party, the Indiana Laborers Pension and Welfare Funds (the "Indiana Movants"). The various movants have pressed their respective cases through a menagerie of briefs and letters to the Court and ably presented their positions to the Court at a hearing on October 16, 2019.

Although the UPR/Detroit Movants and the Aroras both hold larger financial interests in this litigation than do the Indiana Movants, the Court finds that both suffer from unique issues that cast doubt upon their ability adequately to serve as lead plaintiff. Therefore, for the reasons detailed below, the Court elects to consolidate the above-captioned matters and to appoint the Indiana Movants as lead plaintiff pursuant to the PSLRA. The Court also selects counsel for the Indiana Movants —

Robins Geller Rudman & Dowd LLP and the Kendall Law Group - as Lead Counsel for the class in the consolidated action.

I.   FACTUAL BACKGROUND

The instant dispute arises out of three overlapping securities class actions brought against Defendant Diebold Nixdorf, Incorporated ("Diebold" or the "Company") - an international provider of commerce services, software, and technology - by purchasers of the Company's securities. Two of those actions were brought in this Court. See Karp v. Diebold Nixdorf, Inc., No. 19-cv-06180 (LAP) (S.D.N.Y. 2019); City of Dearborn Heights Act 345 Police & Fire Retirement Sys. V. Diebold Nixdorf, Inc., No. 19-cv-06514 (LAP) (S.D.N.Y. 2019) (together, the "SDNY Actions").[1] A third, and closely related, action was also brought in the Northern District of Ohio. See City of Livonia Retiree Health & Disability Benefits Plan v. Diebold Nixdorf, Inc., No. 19-cv-01887 (JRA) (N.D. Oh. Aug. 20, 2019) (the "Ohio Action").

The SDNY Actions and the Ohio Action center around substantially similar alleged misconduct and involve the same claims.[2] In all three actions, Plaintiffs allege that Diebold

---

[1] Unless otherwise specified, all "dkt." citations are references to the docket in Karp v. Diebold Nixdorf, Inc., et al., No. 19-cv-06180 (LAP) (S.D.N.Y. 2019).

[2] Compare (Complaint, Karp v. Diebold Nixdorf, Inc., No. 19-cv-06180 (LAP), dated July 2, 2019 [dkt. no. 1]); with (Complaint, City of Dearborn Heights Act 345 Police & Fire Retirement Sys.

and its executives repeatedly led investors to believe that integration efforts in the wake of the Company's November 2015 merger with competitor Wincor Nixdorf were proceeding smoothly, all the while concealing that the Company was suffering from significant integration-related cost overruns. These misstatements by Defendants, aver the Plaintiffs, artificially increased the value of the Company's securities, caused the Plaintiffs to purchase the securities at inflated prices, and damaged the Plaintiffs when the truth came out and the price of the securities dipped. A tale as old as time.

On July 2, 2019, the same day as the commencement of his action against Diebold, Plaintiff Karp published notice of the securities class action via Global Newswire. (See Pomerantz LLP Global Newswire Press Release, dated July 2, 2019 [dkt. no. 16 ex. 2]). The notice provided for 60 days, i.e., until September

---

v. Diebold Nixdorf, Inc., No. 19-cv-06514 (LAP), dated July 12, 2019 [dkt. no. 1]); with (Complaint, City of Livonia Retiree Health & Disability Benefits Plan v. Diebold Nixdorf, Inc., No. 19-cv-01887 (JRA), dated July 2, 2019 [dkt. no. 1]). As noted in the UPR/Detroit Movants' briefing, the primary difference between the SDNY Actions and the Ohio Action is that the Ohio Action contains an extended Class Period of February 14, 2017 through August 1, 2018, as compared to a period of February 14, 2017 through July 4, 2017 in the SDNY Actions. (See UPR/Detroit Movants' Memorandum of Law in Support of Motion for Appointment as Lead Plaintiff ("UPR/Detroit Movants' Mem. Of Law in Support of Mot. for Appt. as Lead Pl."), dated Sept. 3, 2019 [dkt. no. 15], 2.)

3, 2019, the last day permitted under the PSLRA,[3] for parties to submit their applications to serve as lead plaintiff.

On September 3, 2019, the UPR/Detroit Movants filed their motion, but neglected to disclose their specific financial interest in the litigation. (See UPR/Detroit Movants' Mem. Of Law in Support of Mot. for Appt. as Lead Pl.) Shortly thereafter, this Court requested that the UPR/Detroit Movants indicate their asserted recoverable losses as soon as practicable. Following the Court's request, the UPR/Detroit Movants submitted that they have suffered combined losses of $1,563,084.85 in a September 5, 2019 letter to the Court. (See UPR/Detroit Movants' Letter re: Losses, dated Sept. 5, 2019 [dkt. no. 22]).

The Aroras timely filed their motion seeking appointment as lead plaintiff, originally claiming $1,958,558.54 in losses stemming from Diebold's alleged nondisclosure. (See Aroras' Memorandum of Law in Support of Motion for Appointment as Lead Plaintiff ("Aroras' Mem. of Law in Support of Mot. for Appt. as Lead Pl."), dated Sept. 3, 2019 [dkt. no. 18], 2). However, in their September 5, 2019 letter, the UPR/Detroit Movants disputed the Aroras' claimed losses, noting that they "may have accounted for the same securities transactions twice in calculating their

---

[3] See Section I, infra at 7.

losses." (See UPR/Detroit Movants' Letter re: Losses). In acknowledgment of the error, the Aroras submitted to the Court a corrected loss chart showing $1,459,427.91 in losses on September 16, 2019. (See Aroras' Notice of Corrected Exhibit, dated Sept. 16, 2019 [dkt. no. 26]).

Meanwhile, the Indiana Movants demonstrated their intention to seek the role of lead plaintiff in a somewhat novel manner. Rather than filing a separate motion with this Court on September 3, 2019, the Indiana Movants opted instead to file a Notice of Filing, to which they attached a lead plaintiff motion that they filed in the parallel Ohio Action on the same day. (See Indiana Movants' Memorandum of Law in Support of Motion for Appointment as Lead Plaintiff in Ohio Action ("Indiana Movants' Mem. of Law in Support of Mot. for Appt. as Lead Pl. Mot. in Ohio Action"), dated Sept. 3, 2019 [dkt. no. 19 ex. 1]). The Notice of Filing stated that, should they be appointed lead plaintiff, the Indiana Movants "intend to proceed with all related actions in one jurisdiction." (Id.) The attached motion – based on Sixth Circuit case law – claims losses of $1,050,100.00. (See id. at 4).[4]

_____

[4] Two weeks after filing their respective motions and follow-up materials, the UPR/Detroit Movants and the Aroras filed a Joint Stipulation and Proposed Order acknowledging that the UPR/Detroit Movants were presumptively the most adequate plaintiff given their claimed losses. (See Letter re: Joint Stipulation and Proposed Order, dated Sept. 17, 2019 [dkt. no.

II. <u>LEGAL STANDARD</u>

The PSLRA demands that a plaintiff in a putative securities class action publish a notice of "the pendency of the action, the claims asserted therein, and the purported class period" in a "widely circulated national business-oriented publication or wire service" within 20 days of the commencement of the action. 15 U.S.C. § 78u-4(a)(3)(A). Once said notice has been published, the PSLRA allows members of the plaintiff class to move for appointment as lead plaintiff "not later than 60 days after the date on which the notice is published." <u>Id</u>.

Once it is determined that the various lead plaintiff motions have been timely filed, the PSLRA establishes a "two-step competitive process" to determine which of the moving plaintiffs is most adequate. <u>In re eSpeed, Inc. Sec. Litig.</u>, 232 F.R.D. 95, 97 (S.D.N.Y. 2005). First, the PSLRA establishes a rebuttable presumption that the most adequate plaintiff is the person or group of persons that has: (1) "either filed the complaint or made a motion in response"; (2) "has the largest financial interest in the relief sought by the class"; and (3) "otherwise satisfies the requirements of Rule 23 of the Federal

---

30]). These materials exclude any mention of the Indiana Movants. At the October 16 hearing the Aroras argued that, should the Court not select the UPR/Detroit Movants, then the Aroras were qualified to serve as lead plaintiff in their stead.

7

Rules of Civil Procedure." 15 U.S.C. §§ 78u-
4(a)(3)(B)(iii)(I)(aa) – (cc).

After the presumptive lead plaintiff has been identified,
class members may rebut the statutory presumption via proof that
the presumptive lead plaintiff "will not fairly and adequately
protect the interests of the class" or is otherwise subject to
"unique defenses" that undermine the presumptive lead
plaintiff's ability to represent the class. Benival v. Avon
Products, Inc., No. 19-cv-1420 (CM), 2019 WL 2497739, at *1
(S.D.N.Y. June 3, 2019) (quoting 15 U.S.C. § 78-u4
(a)(3)(B)(iii)(II)).

Determining which plaintiff possesses the "largest
financial interest" in a given litigation requires courts to
consider: "(1) the number of shares purchased during the class
period; (2) the number of net shares purchased during the class
period (i.e.[,] the number of shares retained during the
period); (3) the total net funds expended during the class
period; and (4) the approximate loss suffered during the class
period." Lang v. Tower Group Int'l, Ltd., No. 13-cv-6181 (AT),
2014 WL 12779212, at *2 (S.D.N.Y. June 17, 2014) (citations
omitted). The magnitude of the loss is the most significant
factor in this equation. Plaut v. Goldman Sachs Grp., Inc., No.
18-CV-12084 (VSB), 2019 WL 4512774, at *2 (S.D.N.Y. Sept. 19,
2019) (citations omitted); see also Gutman v. Sillerman, No. 15-

cv-7192, 2015 WL 13791788, at *4 (S.D.N.Y. Dec. 8, 2015) ("Most courts agree that the largest loss is the critical ingredient in determining the largest financial interest.").

Finally, to demonstrate that it otherwise "satisfies the requirements of Rule 23 of the Federal Rule of Civil Procedure" under the PSLRA, a "moving plaintiff must only make a preliminary showing that [Rule 23's] adequacy and typicality requirements have been met." Peifa Xu v. Grisdum Holding Inc., No. 18-cv-3655 (ER), 2018 WL 4462363, at *4 (S.D.N.Y. Sept. 17, 2018). With respect to the typicality inquiry, courts "consider whether the claims of the proposed lead plaintiff arise from the same conduct from which the other class members' claims and injuries arise." In re Initial Public Offering Sec. Litig., 214 F.R.D. 117, 121 (S.D.N.Y. 2002) (internal citations and quotations omitted). The moving plaintiff's and the other class members' claims, however, "need not be identical," only "substantially similar." Micholle v. Ophthotech Corp., No. 17-cv-210 (VSB), 2018 WL 1307285, at *6 (S.D.N.Y. Mar. 13, 2018) (citations omitted). Evaluating the adequacy of a lead plaintiff implicates, among other things, "the size, available resources and experience of the proposed lead plaintiff . . . the qualifications of the proposed class counsel . . . and any potential conflicts or antagonisms arising among purported class members." Blackmoss Investments, Inc. v. ACA Cap. Holdings,

9

Inc., 252 F.R.D. 188, 191 (S.D.N.Y. 2008) (citations omitted); see also Bassin v. DeCODE Genetics, Inc., 230 F.R.D. 313, 316 (S.D.N.Y. 2005).

## III. DISCUSSION

### 1. Consolidation

As an initial matter, consolidation is clearly merited in this instance. Federal Rule of Civil Procedure 42(a) "empowers a trial judge to consolidate actions for trial when there are common issues of law or fact" and where consolidation will avoid needless costs or delay. Mustafin v. Greensky, Inc., No. 18-cv-11071 (PAE), 2019 WL 1428594, at *3 (S.D.N.Y. March 29, 2019) (citations omitted). Here, the SDNY Actions assert "virtually identical claims based on virtually identical factual allegations." Rhode Island Laborers' Pension Fund v. Fedex Corp., et al., No. 19-cv-5990 (RA), 2019 WL 5287997, at *2 (S.D.N.Y. Oct. 18, 2019) (quoting Janbay v. Canadian Solar, Inc., 272 F.R.D. 112, 118 (S.D.N.Y. 2010)); see also Kniffin v. Micron Tech., Inc., 379 F. Supp. 3d 259, 262 (S.D.N.Y. 2019); Lang, 2014 WL 12779212, at *1. Moreover, it appears to be undisputed amongst the Parties that consolidation is appropriate here. Accordingly, the SDNY Actions will be consolidated into a single action, captioned Karp, et al. v. Diebold Nixdorf, Inc., et al., No. 19-cv-06180 (LAP).

### 2. Selection of Lead Plaintiff and Lead Counsel

10

a. Timely Motions

All three parties have filed timely motions.  The only sticking point with respect to timeliness pertains to the Indiana Movants, who opted to attach their lead plaintiff motion in the Ohio Action to a "Notice of Filing" rather than filing a duplicative motion with this Court.  (See Indiana Movants' Mem. of Law in Support of Mot. for Appt. as Lead Pl. Mot. in Ohio Action.)  The UPR/Detroit Movants took issue with this approach in a letter to the Court, asserting that because the Indiana Movants only filed a Notice pertaining to their motion in the Ohio Action, that they did not "move the Court" for purposes of the PSLRA.  (See UPR/Detroit Movants Letter re: Opposition by Indiana Movants, dated Sept. 24, 2019 [dkt. no. 38]); see also 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).  Accordingly, the UPR/Detroit Movants urged this Court to "strike the submissions of the [Indiana Movants] as untimely under the explicit requirements of the PSLRA."  (UPR/Detroit Movants Letter re: Opposition by Indiana Movants at 1).

The Court declines to strike the Indiana Movants' submissions.  Even assuming arguendo that the Indiana Movants method of filing was procedurally improper, the purpose of the PSRLA's timely filing requirement is to "create[] a bounded universe of potential lead plaintiffs" from which the Court can select.  Reitan v. China Mobile Games & Ent. Grp., Ltd., 68 F.

Supp. 3d 390, 398 (S.D.N.Y. 2014). At the very least, and
despite the UPR/Detroit Movants' contention that it is "wholly
inconsistent with the PSLRA," UPR/Detroit Movants Letter re:
Opposition by Indiana Movants at 2, the Indiana Movants' Notice
of Filing accomplished that purpose. As such, the Court elects
to consider their candidacy in tandem with that of the
UPR/Detroit Movants and the Aroras.

     b. Selection of Lead Plaintiff

    The UPR/Detroit Movants, who claim $1,563,084.85 in total
losses,[5] are the largest stakeholders in this litigation. The
Court further finds that the UPR/Detroit Movants have made a
prima facie demonstration that they "otherwise satisf[y] the
requirements of Rule 23 of the Federal Rules of Civil
Procedure." See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).
Therefore, the UPR/Detroit Movants would become lead plaintiff
absent proof that they "will not fairly and adequately protect
the interests of the class" or are "subject to unique defenses
that render such plaintiff incapable of adequately representing
the class." 15 U.S.C. §§ 78u-4(a)(3)(B)(iii)(II)(aa)-(bb).

    The UPR/Detroit Movants' candidacy trips over this final
hurdle. In their briefing, the Indiana Movants described the

---

[5] There is some dispute amongst the parties about the proper
methodology for calculating losses. However, because the Court
finds that only the Indiana Movants are adequate to serve as
lead plaintiff, it need not reach that issue here.

"unique - and severe - funding challenges" faced by the UPR
System. (See Indiana Movants' Opposition to Lead Plaintiff
Motion ("Indiana Movants' Opp. to Lead Pl. Mot."), dated Sept.
17, 2019 [dkt. no. 31], 6). The UPR System "is highly dependent
on funding from the University of Puerto Rico [] which receives
its funding from the Commonwealth of Puerto Rico," (id. at 6
n.5), which itself filed for bankruptcy in May 2017. Since
then, the destruction caused by Hurricane Maria and political
instability stemming from Governor Ricardo Rosselló's
resignation have exacerbated Puerto Rico's already dire fiscal
situation. (See id. at 6). This has placed constraints on the
amount that the University has been able to contribute to the
UPR System, which received under half of its expected
contribution from the University for 2020. See Adriana De Jesus
Salaman, The UPR is being 'seriously irresponsible' with its
withdrawal system, NOTICEL (Oct. 4, 2019). And, as Puerto Rico's
financial collapse drags onward, there appears to be a material
risk that these funding constraints continue to grow more
severe.

In the Court's eyes, the UPR System's financial predicament
undermines the presumption that the UPR/Detroit Movants are the
most adequate plaintiff. In their briefing in the Ohio Action,
the UPR/Detroit Movants argued that the UPR System is "removed
from the issues surrounding the Commonwealth and its bankruptcy

13

proceedings." (See UPR/Detroit Movants Reply Brief In Ohio
Action, dated Oct. 16, 2019 [dkt. no. 49-2], 7). However, that
does not appear to be entirely the case. Indeed, the University
has already started to underfund the UPR System due to the
Puerto Rican financial crisis. See Salaman, supra. Similarly,
an Ernst & Young audit of the UPR System cited by both the
Indiana Movants and the UPR/Detroit Movants directly links the
fate of the University and that of the UPR System, emphasizing
that "risks and uncertainties facing the University" raise
"substantial doubt" as to the UPR System's ability to continue
as a going concern. See Ernst & Young LLP, Audited Financial
Statements and Required Supplementary Information with Report of
Independent Auditors, University of Puerto Rico Retirement
System, Years Ended June 30, 2016 and 2015, dated April 27,
2018, 24.

The UPR/Detroit Movants have put a brave face on the
situation, noting that the UPR System can operate for another 15
years "even if funding from the University to the [UPR System]
were to suddenly cease." (UPR/Detroit Movants Reply Brief In
Ohio Action at 10). However, that discounts the realistic
possibility that ongoing political and financial turmoil
surrounding the University will practically impede the UPR
System's ability to manage this litigation. Thus, the Court
finds that there is a "non-speculative" risk that the

UPR/Detroit Movants will not be an adequate lead plaintiff. See Schaffer v. Horizon Pharma Plc, No. 16-CV-1763 (JMF), 2016 WL 3566238, at *3 (S.D.N.Y. June 27, 2016) (citing cases where courts have rejected lead plaintiffs based on non-speculative potential risks.).

The Aroras, who are next in line to become lead plaintiff given their claimed loss of $1,459,427.91, fare no better.[6] While the Aroras contend that they need not "provide adequate information about themselves" on top of the requirements of the PSLRA, (see Arora Reply Brief in Response to Opposition, dated Sept. 24, 2019 [dkt. no. 37], 4), they nonetheless need to provide enough information to make a preliminary showing of adequacy under Rule 23.

The Court finds that the Aroras have failed to make such a preliminary showing. While the "size, available resources, or even experience of a candidate are not dispositive factors in

---

[6] The Indiana Movants additionally proffered that the Aroras are inadequate to function as lead plaintiff because they are "day traders" whose incentives do not align with the remainder of the putative class. (See Indiana Movants' Opp. Br., dated Sept. 16, 2019 [dkt. no. 31], 9-11). This argument is unavailing. "[T]he prevailing view in [the Second Circuit] is that day and momentum traders have the same incentives to prove defendants' liability as all other class members, and their presence in a securities class does not create intra-class conflicts." Prefontaine v. Research in Motion Ltd., No. 11 Civ. 4068 (RJS), 2012 WL 104770, at *4 (S.D.N.Y. Jan. 5, 2012) (quoting In re Initial Public Offering Sec. Litig., 227 F.R.D. 65, 108 (S.D.N.Y. 2004)). The Court reaches its decision not to select the Aroras, therefore, on other grounds.

15

appointing a lead plaintiff, they are nonetheless relevant to reaching a determination as to whether a candidate will be capable of adequately protecting the interests of the class." Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., 229 F.R.D. 395, 417-18 (S.D.N.Y. 2004). Here, the Aroras, as individual investors, have provided the Court with little to go on with respect to their alleged capacity to manage this litigation. For example, the Certifications supplied by the Aroras note that they have not served as a lead plaintiff in a securities action within the past three years, and the Court has no knowledge as to whether the Aroras have ever had any experience serving as lead plaintiff prior to that. (See Certification of Manoj Arora, dated Sept. 3, 2019 [dkt. no. 20-1], ¶ 5); see also Certification of Neelam Arora, dated Sept. 3, 2019 [dkt. no. 20-1], ¶ 5). Given this lack of information, the Court is skeptical that the Aroras are equipped to serve as lead plaintiff.

Moreover, the Court is disquieted by the errors contained in the Aroras' original submissions. See Section I, supra at 5. While "the goal of the PSLRA was not to select [lead plaintiffs] who make no mistakes," Reitan, 68 F. Supp. 3d at 399, the exaggerated loss totals originally submitted by the Aroras represented no slight error; it was an error of some 34%. The error struck at the core of the PSLRA's lead plaintiff inquiry:

determining which movant holds the largest financial stake in the litigation. And, despite the relative importance of this error, the Court notes that it took the Aroras nearly two weeks to supply corrected figures. Taken together, these issues indicate to the Court a "certain carelessness about detail that undermines the adequacy" of the Aroras as a lead plaintiff in a complex securities class action. Bhojwani v. Pistiolis, No. 06 Civ. 13761(CM)(KNF), 2007 WL 9228588, at *3 (S.D.N.Y. July 31, 2007). The Court thus finds that the errors in the Aroras' submissions further "militate against appointment and render [them] inadequate to serve as lead plaintiff." Micholle, 2018 WL 1307285, at *9.

That leaves the Indiana Movants as the last movant standing. Given that the Court has found both the UPR/Detroit Movants and the Aroras inadequate, the fact that the Indiana Movants claim the smallest financial stake of the parties contending for lead plaintiff is of no import at this stage of the analysis. As such, the Court will appoint the Indiana Movants lead plaintiff if they otherwise satisfy the strictures of Rule 23 and the PSLRA's statutory presumption is not rebutted. See 15 U.S.C. §§ 78u-4(a)(3)(iii)(I)(cc), 78u-4(a)(3)(iii)(II).

The Court is satisfied that the Indiana Movants have made a preliminary showing of typicality and adequacy. First, the

17

Indiana Movants' claims are typical of those of the putative class because they "arise[] from the same course of events" and "make similar legal arguments to prove the defendant's liability." Oklahoma Firefighters Pension & Ret. Sys. v. Xerox Corp., No. 16-cv-8260 (PAE), 2017 WL 775850, at *5 (S.D.N.Y. Feb. 28, 2017) (citations omitted). Like other class members, the Indiana Movants purchased Diebold securities during the class period at prices that they contend were inflated by the Company's allegedly false and misleading statements and were damaged thereby. Id.; see also Alkhoury v. Lululemon Athletica, Inc., No. 13-cv-4596 (KBF), 2013 WL 5496171, at *2 (S.D.N.Y. Oct. 1, 2013) (finding typicality where proposed lead plaintiff "purchased Lululemon common stock during the class period at prices that were allegedly inflated due to defendants' material false or misleading statements or omissions, and were thus damaged."). As such, the Indiana Movants preliminarily meet Rule 23's typicality requirements.

The Court is also convinced that the Indiana Movants can serve adequately as lead plaintiff. Xianglin Shi v. Sina Corp., No. 05 Civ. 2154 (NRB), 2005 WL 1561438, at *5 (S.D.N.Y. July 1, 2005) ("In enacting the PSLRA, Congress expressed an intention to encourage institutional investors to step forward and assume the role of lead plaintiff in an effort to prevent lawyer-driven litigation.") At top, the Indiana Movants are "sophisticated

institutional investors with more than $1.3 billion in combined assets under management for the benefit of more than 26,000 participants." (See Indiana Movants' Mem. of Law in Support of Mot. for Appt. as Lead Pl. Mot. in Ohio Action at 5); see also Xerox, 2017 WL 775850, at *5 ("APERS is a sophisticated institutional investor overseeing more than $7 billion of assets under management for more than 90,000 participants."); Xianglin Shi, 2005 WL 1561438, at *5 ("Each institution [at MAPERS Funds Group] is a sophisticated investor with millions of dollars of assets under its control."). Moreover, the Indiana Movants have ample experience serving as lead plaintiffs in complex security class actions. (Indiana Movants' Mem. of Law in Support of Mot. for Appt. as Lead Pl. Mot. in Ohio Action at 5-6) (describing Indiana Movants role as lead plaintiff in Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund, 135 S. Ct. 1318 (2015)); see also City of Westland Police & Fire Ret. Sys. v. MetLife, Inc., No. 12 Civ. 0256 (LAK) (AJP), 2017 WL 3608298, at *8 (S.D.N.Y. Aug. 22, 2017) (appointing lead counsel because of the firm's extensive experience litigating securities fraud cases). In short, the Indiana Movants are the type of sophisticated institutional investor that was specifically encouraged by the PSLRA's lead plaintiff provisions. See In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. 42, 46 (S.D.N.Y. 1998).

Finally, neither the UPR/Detroit Movants nor the Aroras have rebutted the presumption that the Indiana Movants should serve as lead plaintiff. The parties have primarily opposed the candidacy of the Indiana Movants on procedural grounds, stressing the unorthodox manner in which they elected to file their "motion" with this Court. (See, e.g., UPR/Detroit Movants Letter re: Opposition by Indiana Movants). Given that the Court has already elected to consider the Indiana Movants' submissions, the Court accordingly names the Indiana Movants lead plaintiff.

   c. Selection of Lead Counsel

"Although the Court maintains discretion in appointing lead counsel to protect the interests of the class, the [PSLRA] evidences a strong presumption in favor of appointing a properly-selected lead plaintiff's decision as to counsel selection and counsel retention." Casper v. Song Jinan, No. 12-cv-4202 (NRB), 2012 WL 3865267, at *3 (S.D.N.Y. Sept. 6, 2012). The Court sees no reason to upset the apple cart today, as the Indiana Movants have hired capable, experienced lead counsel in Robins Geller and Kendall Law Group. Accordingly, the Court approves their selection as lead counsel.

IV.  CONCLUSION

  For the aforementioned reasons, the motions to consolidate the SDNY Actions (dkt. nos. 14, 17) are granted, the Indiana

Movants are appointed lead plaintiff, and the Indiana Movants'
selected lead counsel is approved.  The SDNY Actions will be
consolidated into a single action, captioned Karp, et al. v.
Diebold Nixdorf, Inc., et al., No. 19-cv-06180 (LAP).


        **SO ORDERED.**

Dated:      New York, New York
             October 30, 2019

                          LORETTA A. PRESKA
                          Senior United States District Judge