UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| |
|---|
| SELWYN KARP, Individually and On Behalf of All Others Similarly Situated, |
| Plaintiff, |
| -against- |
| DIEBOLD NIXDORF, INCORPORATED, ANDREAS W. MATTES, and CHRISTOPHER A. CHAPMAN, |
| Defendants. |

19 Civ. 6180 (LAP)

MEMORANDUM & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is the UPR/Detroit Movants' motion for reconsideration of the Court's October 30, 2019 order appointing the Indiana Movants as lead plaintiffs in the above-captioned action. (See Opinion & Order (the "October 30 Order"), dated October 30, 2019 [dkt. no. 51]).[1] (See UPR/Detroit Movants' Memorandum of Law in Support of Motion for Reconsideration ("Reconsideration Mot. Mem."), dated November 13, 2019 [dkt. no. 54]; (see also Indiana Movants' Opposition to Motion for Reconsideration ("Opp."), dated November 19, 2020 [dkt. no. 58]); (see also UPR/Detroit Movants' Reply in Support of

---

[1] Unless noted otherwise, the Court uses the same defined terms as used in the October 30 Order. Moreover, the factual background of this case is set forth in my October 30, 2019 Opinion & Order. The parties' familiarity with the facts underlying the instant dispute is presumed.

1

Reconsideration ("Reply"), dated November 21, 2019 [dkt. no. 60]). For the reasons detailed below, the motion to reconsider is <u>granted</u>, but, after reconsideration, the Court adheres to its original opinion.

"A motion for reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." <u>Drapkin v. Mafco Consol. Grp., Inc.</u>, 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011) (citation and internal quotation marks omitted). Such motions "are properly granted only if there is a showing of: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) a need to correct a clear error or prevent manifest injustice." <u>Id</u>. at 696. "Reconsideration should not be granted where the moving party seeks solely to relitigate an issue already decided...." <u>Christoforou v. Cadman Plaza N., Inc.</u>, 04 Civ. 8403 (KMW), 2009 WL 723003, at *7 (S.D.N.Y. Mar. 19, 2009) (citation and internal quotation marks omitted).

Here, the Court acknowledges that this particular lead plaintiff appointment process was, as the UPR/Detroit Movants put it, "convoluted." (<u>See</u> Mot. at 9); (<u>see also</u> Reply at 10). The UPR/Detroit Movants argue that the process did not afford them an adequate opportunity to respond to information initially raised at oral argument and caused the Court to overlook--or, at

2

least, prevented the UPR/Detroit Movants from submitting—information germane to the UPR/Detroit Movants' adequacy that feasibly could have altered the conclusions contained in the October 30 Order. Cf. Olin Corp. v. Lamorak Ins. Co., 2018 WL 4360775, at *2 (S.D.N.Y. Aug. 17, 2018) ("[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.") (internal quotations and citations omitted). In response to that argument, the Court will reconsider its ruling based on the arguments raised in the UPR/Detroit Movants' briefing on the instant motion, including the substance of the Declaration of Samuel Nalas Perez submitted in connection therewith. (See Declaration of Samuel Nalas Perez ("Perez Decl."), dated November 13, 2019 [dkt. no. 53-1]).[2]

The thrust of the UPR/Detroit Movants' argument is that the Court's original decision, in which it found that the UPR/Detroit Movants' presumption of adequacy was rebutted by information submitted by the Indiana Movants related to the

---

[2] In addition, the Court denies the Indiana Movants' motion to strike certain arguments regarding the purported underfunding of the Indiana Movants raised by the UPR/Detroit Movants' in its reply briefing but considers the "brief rebuttal" included in the papers supporting that motion. (See Motion to Strike, dated November 25, 2019 [dkt. no. 62]).

3

Puerto Rican financial crisis, was based on "unsubstantiated" claims from speculative, sensationalized sources. (See, e.g., Mot. at 1). These sources, aver the UPR/Detroit Movants, could not provide the degree of proof necessary to rebut the presumption of adequacy afforded to them as the largest stakeholders in the litigation. (Id. at 10). Instead, the UPR/Detroit Movants argue that "[t]he financial and political developments associated with [Puerto Rico's] bankruptcy have not in any way impeded the UPR Retirement Board from effectively administering the Retirement System" and that Puerto Rico's financial woes "have had no impact on the UPR Retirement System's current or foreseeable operations or its ability to adequately and effectively manage this litigation." (See Perez Decl. ¶¶ 9-10).

Upon reconsideration, however, the Court stands by its original decision to appoint the Indiana Movants lead plaintiffs. The UPR/Detroit Movants insist that the PSLRA requires "exacting proof" to rebut the presumption of adequacy. (See Mot. at 10); (see also Reply at 7). To be sure, the PSLRA requires "proof" that a presumptive lead plaintiff "will not adequately protect the interests of the class," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa), and all agree that this requires something beyond mere speculation. But what constitutes "proof" is not firmly established. As this District has noted, however,

4

determining whether the presumption has been rebutted is a "predictive and probabilistic" process that requires evaluation of "potential" risks. Schaffer v. Horizon Pharma Plc, 2016 WL 3566238, at *2-3 (S.D.N.Y. June 27, 2016).[3] Properly evaluating which "potential risks" matter and which do not is admittedly a nebulous charge, but the breadth of that inquiry underscores that the district court's "ultimate obligation [is] to appoint as lead plaintiff [the candidate] who [is] most capable of representing the interests of the class members." Pirelli Armstrong Tire Corp. Retiree Medical Benefits Tr. V. LaBranche & Co., Inc., 229 F.R.D. 395, 407 n.19 (S.D.N.Y. 2004) (internal citations and quotations omitted). Based on its evaluation of those potential risks, the Court has done that here.

While the additional color provided by the UPR/Detroit Movants might have made the Court's decision more difficult, it has not alleviated the Court's central concern about the linkage between the University of Puerto Rico and the UPR System, which largely depends on the University's funding. Much of the UPR/Detroit Movants' argument centers around the Court's

---

[3] The UPR/Detroit Movants appear to misapprehend the Court's reliance on Schaffer v. Horizon Pharma Plc in the October 30 Order, arguing that it is "inapposite from the instant set of facts." (See Mot. at 14). However, the Court did not cite Schaffer for its factual relevance, but for the concept that courts can--and do--reject presumptive lead plaintiffs based on potential, unmanifested risks.

5

reliance on a Noticel article. But, even assuming arguendo that the Noticel article cited in the October 30 Order is, as the UPR/Detroit Movants aver, "speculative," "sensationalized," and "riddled with half-truths," Mot. at 11-12, the Ernst & Young audit of the UPR System relied upon by the Court—and cited by both parties--is not. That source directly undermines any contention that the UPR System is completely insulated either from the University or the broader financial woes of the Commonwealth of Puerto Rico. (See E&Y Audit at 2 (Noting that "the System is highly dependent on funding from the [University]" and that "[t]he financial difficulties experienced by the Commonwealth" raise "substantial doubt about the System's ability to continue as a going concern.")). Indeed, in his Declaration, Executive Director of the UPR Retirement System, Samuel Nalas Prez, confirms that "[r]ecently, the University's Governing Board proposed an $80 million contribution for the upcoming fiscal year of 2020 rather than the $161 million set forth by the Financial Oversight and Management Board's . . . fiscal plan." (See Perez Decl. ¶ 13).

The Ernst & Young audit also undermines the UPR/Detroit Defendants' various arguments regarding underfunding. The UPR/Detroit Movants state that "relevant authority demonstrates that a funding deficiency is not a basis to deny the appointment of a pension fund." (Reply at 6). However, underfunding does

6

not seem to be invariably irrelevant to the lead plaintiff appointment process. For example, in one of the UPR/Detroit Movants' cited cases, Cortese v. Radian Group Inc., the Eastern District of Pennsylvania only appointed the relevant pension fund after it had "assuaged" the Court's concerns by demonstrating that it was 70 percent funded, rather than 56 percent funded as proffered by an opposing lead plaintiff candidate. See 2008 WL 269473, at *4 (E.D. Pa. Jan. 30, 2008). Here, the Ernst & Young audit reveals that the UPR System maintained far lower funding ratios (between 43 and 48 percent) in 2015 and 2016. (See E&Y Audit at 28); (see also Elizabeth Redden, *Deep Cuts in Puerto Rico*, Inside Higher Ed (July 11, 2019) ("The fiscal plan for the university certified by the oversight board in June also discusses UPR's pension system, which according to plan is funded only at a 43-percent level."). Cf. In re City of Stockton, Cal., 526 B.R. 35, 46 (E.D. Cal. Bankr. 2015) (noting that a fully funded pension has a "funding ratio of 1.0, colloquially stated in percent."). This degree of underfunding makes the UPR System's situation distinguishable from that of the fund evaluated in Cortese and strikes the Court as pertinent to the selection of a lead plaintiff. The Court does not rely on the UPR System's lack of funding as a sole ground for rebutting the presumption, but that underfunding, taken in conjunction with the UPR System's reliance on the

7

University and financial uncertainty in Puerto Rico, counsel in favor of adhering to the October 30 Order.

CONCLUSION

The UPR/Detroit Movants' motion for reconsideration [dkt. no. 54] is <u>granted</u>. However, upon reconsideration the Court adheres to its October 30, 2019 order appointing the Indiana Movants as lead plaintiff [dkt. no. 51]. The Indiana Movants' motion to strike [dkt. no. 62] is <u>denied</u>.

SO ORDERED.

Dated:  New York, New York
        December 5, 2019

*Loretta A. Preska*
LORETTA A. PRESKA
Senior United States District Judge